IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHICAGO TITLE INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DEWRELL SACKS, LLP., ) <br> ) <br> Defendant. ) <br> ) | Case No. 3:08-1083 <br> Judge Trauger |

## MEMORANDUM

Pending before the court is the defendant's Motion for Reconsideration (Docket No. 39). This motion, while not a proper Motion for Reconsideration, will be granted in part, that is, the record demonstrates that service of process in this case was not in accordance with the relevant rules of civil procedure. That said, dismissal of this action is not appropriate, and the appropriate remedy is to afford the plaintiff additional time to properly serve the Complaint.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On November 24, 2009, this court entered a Memorandum and Order (Docket Nos. 37 and 38) that ruled on the pending motions for summary judgment in this matter, which were the plaintiff's Motion for Summary Judgment (Docket No. 17) and the defendant's [Partial] Motion for Summary Judgment Dismissing Plaintiff's Allegations of Professional Negligence Based Upon the Expiration of the Statute of Limitations (Docket No. 25).

In conjunction with responding to the plaintiff's summary judgment motion, the defendant filed the declaration of one of its principals, Mara Sacks Dewrell. (Docket No. 28 Ex.

1

3.) While primarily discussing the contractual dispute that is at the core of this case, Ms. Sacks Dewrell did state that the defendant had not been properly served with the Complaint. (*Id.* at 3.) Specifically, she claimed that the address to which the plaintiff mailed the summons and Complaint was not the defendant's address, but was, rather, the former address of her former company. (*Id.*) Moreover, Ms. Sacks Dewrell stated that the individual who apparently signed for the certified mail package, "B. Stocker," is unknown to her and was certainly not authorized to accept service on behalf of the defendant.

Beyond this, further briefing and discussion of the service of process issue by the defendant during the summary judgment stage of the proceedings was essentially non-existent. Indeed, in response to the plaintiff's Motion for Summary Judgment, the defendant, in a two-paragraph discussion that cited no case law and largely relied upon the declaration of Ms. Sacks Dewrell, argued that there was a genuine issue of fact as to whether service of process was sufficient and that this precluded summary judgment for the plaintiff. (Docket No. 28 at 21-22.)

In the November 24, 2009 Memorandum that ruled on the summary judgment motions in this case, the court included a lengthy and detailed footnote that discussed the service of process issue and the fact that the defendant maintains an affirmative defense based upon insufficiency of process. (Docket No. 37 at 14-15.) In this footnote, the court did not attempt to resolve the issue. Indeed, the circumstances surrounding the service of process in this case were unclear, largely because "[n]either side has sufficiently developed the record on this issue or appropriately briefed the matter with controlling authority" and because "the defendant elected not to further develop the record on this issue either by filing a motion to dismiss or a motion for

summary judgment on this point." (*Id.*)

In the Memorandum, the court went on to evaluate the other arguments that consumed the vast majority of the parties' summary judgment briefing. After evaluating these issues, the court concluded that the plaintiff had established that the defendant had breached its obligations under the Agency Contract as to two of the four transactions at issue in this case, and that issues of fact precluded a conclusion on breach as to the other two transactions. (Docket No. 37 at 23.) That said, in light of the service of process issue and other assorted matters, the court was careful not to enter a monetary judgment in the plaintiff's favor. Rather, the court stated, "a judgment of any amount in favor of [the plaintiff] would be inappropriate at this time, as issues regarding a potential offset and *other affirmative defenses* could potentially affect the scope of liability." (*Id.*)(emphasis added).

Now, through this Motion for Reconsideration, the defendant attempts, for the first time, to substantively brief the service of process issue, and the defendant seeks, primarily, (1) dismissal of the Complaint for insufficiency of process, or (2), alternatively, that "the Court [] reconsider and reserve its ruling on the [substantive] matter until such time as valid service is established or the Court enters relief to Defendant as requested . . . ." (Docket No. 39 at 2; *see also* Docket No. 47 at 1.) In addition to referencing the previously filed declaration of Ms. Sacks Dewrell, the defendant cites controlling law in support of its argument that service of process in this case was ineffective. (Docket No. 40 at 5-12.)

In response, the plaintiff filed the affidavit of John Cobb Rochford, plaintiff's counsel. (Docket No. 46.) Rochford contends that serving the defendant presented "consistent difficulty"

and that the defendant has been, historically, difficult to contact. (*Id.* at 2.) Rochford goes on to state that, after the Complaint was filed on November 7, 2008, he located the defendant's apparent mailing address on its website, that is, 100 Galleria Parkway, Suite 1850, Atlanta, GA 30339. (*Id.*) Rochford attempted service via certified mail at that address; however, on November 19, 2008, the service attempt was returned "undeliverable as addressed" by the Postal Service.[1] (*Id.*)

After receiving the mail back from the Postal Service, Rochford states that he went back to the defendant's website and found an additional address for the defendant, that is, 2296 Henderson Mill Road, Suite 403, Atlanta, GA 30345. (*Id.*) As Rochford correctly states, this is still listed as the defendant's address on the website, at least for purposes of submitting a wire payment to the defendant. (*Id.*) Rochford claims that, after locating this second address, he called the phone number listed as the "main line" on the web page that identified the Henderson Mill Road address. (*Id.* at 3.) Rochford contends that the person who answered the call identified himself as an employee of the defendant and the individual also confirmed that the Henderson Mill Road address "was, in fact, a valid address." (*Id.*)

On this basis, Rochford states that he then sent the summons and Complaint to the defendant via certified mail, return receipt requested, at the Henderson Mill Road address. (*Id.*) Rochford contends that, in early December 2008, he received the return receipt (with the "B.

---

[1] The court's review of the defendant's website (located at dewrell.com) indicates that the defendant, at least currently, is located at 400 Galleria Parkway, Suite 1500, Atlanta, GA 30339, which is, clearly, similar but not identical to the address to which Rochford originally attempted to send service.

Stocker" signature acknowledging receipt of the package), and, about 30 days later, the defendant filed its Answer, which among many affirmative defenses, asserted a defense of improper service of process. (*Id.*; Docket No. 5; Docket No. 7 at 12.)

## **ANALYSIS**

The defendant seeks reconsideration of the court's November 24, 2009 Memorandum and Order on the grounds that the service on the defendant in this case was insufficient and, therefore, the court should either dismiss this case, or, at least, refrain from making substantive rulings in light of the service deficiencies. (Docket No. 47 at 1.). The plaintiff contends that its service was sufficient under the circumstances, and, even if the court found service to be deficient, the appropriate remedy would be to simply permit the plaintiff an additional opportunity to serve the defendant. (Docket No. 44 at 6.)

### I. Standard of Review

While district courts have "significant discretion" in deciding motions for reconsideration, "[t]raditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004); *see also Roger Miller Music, Inc. v. Sony/ATV Publishing LLC*, 477 F.3d 383, 395 (6th Cir. 2007)(discussing the similar standard under Rule 59(e) and stating "parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued.")

As noted above, this is not a proper Motion for Reconsideration. While the defendant

Stocker" signature acknowledging receipt of the package), and, about 30 days later, the defendant filed its Answer, which among many affirmative defenses, asserted a defense of improper service of process. (*Id.*; Docket No. 5; Docket No. 7 at 12.)

## **ANALYSIS**

The defendant seeks reconsideration of the court's November 24, 2009 Memorandum and Order on the grounds that the service on the defendant in this case was insufficient and, therefore, the court should either dismiss this case, or, at least, refrain from making substantive rulings in light of the service deficiencies. (Docket No. 47 at 1.). The plaintiff contends that its service was sufficient under the circumstances, and, even if the court found service to be deficient, the appropriate remedy would be to simply permit the plaintiff an additional opportunity to serve the defendant. (Docket No. 44 at 6.)

### I. Standard of Review

While district courts have "significant discretion" in deciding motions for reconsideration, "[t]raditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004); *see also Roger Miller Music, Inc. v. Sony/ATV Publishing LLC*, 477 F.3d 383, 395 (6th Cir. 2007)(discussing the similar standard under Rule 59(e) and stating "parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued.")

As noted above, this is not a proper Motion for Reconsideration. While the defendant

"submits that the Court should reconsider whether Plaintiff is entitled to any order of partial summary judgment in light of the fact that Defendant has clearly challenged the sufficiency of service of process," the court was very careful in its previous Memorandum and Order not to grant the defendant any final relief in terms of damages, leaving the door open for the defendant to advance its service of process argument via an appropriate method. (Docket No. 40 at 2.) It would have been unwise for the court to refrain from evaluating the fully briefed issues in this case (including those raised by the defendant's summary judgment motion) simply because the defendant maintained a vague and undeveloped service of process argument. Moreover, the defendant makes no attempt to explain its tardiness on briefing this issue or to apply the Motion for Reconsideration standard, but, rather, it simply seeks to brief an issue that it had every opportunity to brief before and did not do so.[2]

That said, proper service of process is a matter tied to constitutional due process and is required before the court can properly exercise personal jurisdiction over a defendant, and, therefore, the court should undertake to resolve this jurisdictional issue, even if it is raised in a somewhat frustrating manner. *See Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Indeed, Federal Rule of Civil Procedure 4(m) states, in mandatory terms, that "if a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that

---

[2] The defendant also repeatedly states that it is addressing the court's "concern" about the service of process issue and that it is also addressing the court's "suggest[ion]" that the defendant file additional briefing on this point. (Docket No. 39 at 2; Docket No. 40 at 1.) The court simply did not make such a suggestion and certainly did not direct further briefing on this issue.

defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P 4(m).

Additionally, while it is clear that the defendant is well aware of this lawsuit and eventually, somehow, received the Complaint, the Sixth Circuit is clear: "actual knowledge and lack of prejudice cannot take the place of legally sufficient service." *LSJ Inv. Co., Inc., v. OLD, Inc.*, 167 F.3d 320, 324 (6th Cir. 1999). Further, while it remains unclear why the defendant never filed a dispositive motion on this issue, the defendant did not waive this defense, having asserted a defense of insufficiency of service of process in its Answer. (Docket No. 7 at 12.) Therefore, the court will turn to the service of process issue.

**II.     Service of Process**

Here, it is undisputed that the only method of service that the plaintiff attempted to use was service by delivery of the summons and Complaint through certified mail, return receipt requested. While Federal Rule of Civil Procedure 4, which governs service of process, does not explicitly provide for service of process by mail in this instance, in addition to providing for various methods of personal delivery, Rule 4 provides that an individual (or a business entity) may be served in a judicial district in the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed R. Civ. P 4(e)(1); *see also* Fed. R. Civ. P. 4(h).

Here, service was attempted in Georgia, and the district court is located in Tennessee, meaning that the law of those two states is relevant to the inquiry here. Neither party contends

7

that certified mail delivery is an appropriate method of service under Georgia law, and the court's review of Georgia's service of process statute indicates that the method of service carried out in this case is not effective under Georgia law. *See* Ga. Code. Ann. § 9-11-4. The Tennessee Rules of Civil Procedure, however, state that "service by mail of a summons and complaint upon a defendant may be made by the plaintiff, the plaintiff's attorney or by any person authorized by statute." Tenn. R. Civ. P. 4.04(10).

While the Tennessee Rules of Civil Procedure allow a plaintiff to attempt service by mail, actually effecting service by mail requires more than merely dropping the summons and Complaint in the mailbox. While Rule 4.04(10) does not explicitly so state, numerous courts have determined that unless the package is actually received and signed for by the defendant or his "authorized agent," service of process by mail delivery is not effective. *See Massey v. Hess*, 2006 WL 2370205, *3 (E.D. Tenn. Aug. 14, 2006); *Hall v. Haynes & Medsouth Healthcare, PC*, 2009 WL 782761, *13 (Tenn. Ct. App. Mar. 26, 2009)(decision currently on appeal to the Tennessee Supreme Court). In the context of a partnership or corporation, an "authorized agent" may be a "partner," "officer," or "managing agent" of the entity, or another "agent authorized by appointment or by law to receive service" on the entity's behalf. Tenn. R. Civ. P. 4.04(3)-(4). Therefore, under current Tennessee law, unless the entity, through one of these agents, accepts the certified mail package, service cannot be considered complete through mailing. *Hall*, 2009 WL 782761, at *13-15.

Here, the uncontroverted position of the defendant, as stated through the declaration of Ms. Sacks Dewrell, is that the summons and Complaint arrived by certified mail at an address

8

that is not the defendant's and were signed for by an individual who is not associated with the defendant. The plaintiff responds by arguing that "considering that [the plaintiff] served [the defendant] with the Summons and Complaint at the address provided and designated by [the defendant], and considering also that [the plaintiff] confirmed (using [the defendant's] 'main line') that the [] Henderson Mill Road address was valid, [the plaintiff] submits that service delivered at that address is effective, as it was made upon a 'general agent' and/or 'other agent.'" (Docket No. 44 at 4.)

There are at least two problems with this argument. First, the arguably broader "general agent" or "other agent" language to which the defendant cites is found in Federal Rule of Civil Procedure 4(h)(1), which governs personal service on a business entity, not mailed service, and, therefore, this language is not helpful to the plaintiff. *See* Fed. R. Civ. P 4(h)(1). More importantly, even if service on any agent of the company was sufficient, by all appearances, "B. Stocker" was not any sort of agent or employee for the defendant.

Finally, the plaintiff argues that "even if [the plaintiff's] service of process . . . did not comply strictly with the requirements contained in Rule 4," the Sixth Circuit has found Rule 4 to be a "flexible" rule that does not overly sanction "technical error[s]" or permit "procedure to triumph over substance." (Docket No. 44 at 4-5)(citing *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir. 1987); *Sherer v. Construcciones Aeronauticas*, 987 F.2d 1246, 1250 (6th Cir. 1993)). These cases, however, are readily distinguishable, and they do not indicate that the Sixth Circuit takes a relaxed approach to enforcing the strictures of Rule 4. Indeed, to the extent that the plaintiff argues that the court should find service effective based upon the defendant's "good

faith effort," such an argument is not supported by any case law provided by the plaintiff or by the language of Rule 4.

In *Gottfried*, for instance, the issue was whether the court lacked personal jurisdiction over the defendant in a "Section 10(j)" proceeding that was brought by the regional director of the National Labor Relations Board and that was ancillary to one already proceeding in front of the NLRB. 818 F.2d at 492-93. In light of the specific language of the National Labor Relations Act, which granted the court jurisdiction in a Section 10(j) proceeding upon notice to the defendant of the petition, the Sixth Circuit concluded that the court did not lack personal jurisdiction over the defendant because the defendant did not receive the summons along with a copy of the Section 10(j) petition. *Id.* Also, the language in *Sherer* was used in the context of evaluating what constituted proper service upon a defendant under the Foreign Sovereign Immunities Act, and a basic review of that opinion demonstrates that that case's language about appropriate service is simply not well extrapolated outside of the FSIA context. 987 F.2d at 1248-49

Therefore, it appears clear that, while the defendant eventually received the Complaint and had actual notice of the lawsuit, service was not properly effectuated in this case. As noted above, Rule 4(m) provides that, upon concluding that service of process was not properly made within 120 days of the filing of the Complaint, the court must either "dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Also, under the rule, "if plaintiff shows good cause for the failure, the court *must* extend the time for service for an appropriate period." *Id.* (emphasis added)

Here, while the plaintiff contends that it acted in "good faith," it offers nothing in the way of "good cause" for its failure to properly effectuate service. (Docket No. 44 at 6.) Indeed, it appears that the plaintiff was not as thorough or careful as it could have been; the defendant submits that the plaintiff never requested a waiver of service, despite the fact that the parties were familiar with each other from their long-term contractual arrangement. (Docket No. 40 at 11.) Moreover, despite having "difficulties" in confirming the defendant's location, the plaintiff's counsel elected to rely upon the Internet and unidentified individuals in an attempt to serve by certified mail, rather than pursuing the arguably more certain method of personal service and a process server. (*See* Docket No. 46.)

However, as noted above, under Rule 4(m), the court, even in the presence of a long-standing service failure and in the absence of good cause, retains ample discretion in terms of how to proceed. *Massey*, 2006 WL 2370205, at *4. In *Massey*, the court declined to dismiss the action without prejudice and, instead, ordered the plaintiff to properly serve the Complaint within 18 days even though no good cause was shown and the Complaint had been filed 11 months earlier. The court elected to extend the service period after determining that there was no prejudice to the defendant in allowing proper service to be made at a later date as "Defendants have actual knowledge of the suit and have already obtained counsel and filed an answer to the complaint." *Id.* Additionally, the court noted that correct service "may be accomplished in a short period of time" and "Plaintiffs originally made diligent and good-faith efforts to serve Defendants in a timely manner." *Id.* The *Massey* court, considering these factors, afforded the plaintiff the additional time for service but reserved the right to reconsider

dismissal if the defendant was not properly served within that time period. *Id.*

Here, all of the factors identified in *Massey* favor the plaintiff. The defendant had actual notice of this suit, retained counsel, and, moreover, participated in this litigation for about a year without ever making a dispositive motion on deficiency of service grounds. In light of the parties increased familiarity with each other through litigation, there is every indication that the plaintiff would be able to effectuate service in a short period of time. There is also no indication that the plaintiff did not operate in good faith in its attempts to initially effectuate service. Additionally, after the substantial dedication of judicial resources to this matter, including addressing the defendant's partial motion for summary judgment that was not directed to the service of process issue, it would not be in the interest of judicial economy to dismiss this suit, without prejudice.

## CONCLUSION

The defendant's core argument, while ill-timed, not presented in the proper fashion, and ultimately not particularly productive, is correct in that, on this record, the court must conclude that the defendant was not properly served in this case. The plaintiff will be afforded until January 31, 2010 to properly effectuate service.[3]

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[3] The court is aware that there is a mediation in this case scheduled for January 8, 2010. (Docket No. 42.) The court can identify no reason why the service issue should delay the mediation. Additionally, if that mediation is unsuccessful and the service deficiency is resolved, there is no reason the case cannot move forward, employing the court's previous rulings on the dispositive motions in this case. If, for some reason, process is not effectively served by January 31, 2010, the parties should alert the court and the plaintiff's counsel should file an affidavit explaining the basis for the continuing service failure.